UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80226-CIV-MIDDLEBROOKS/VITUNAC

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

GARDEN OF LIFE, INC., and
JORDAN S. RUBIN,

    Defendants.
_____/



## ORDER

THIS CAUSE comes before the Court upon Defendants' Initial Memorandum in Response to this Court's Order to Show Cause Why it Should not be Held in Contempt (DE 40). The Court has considered Defendants' Response, Plaintiff's Motion for and Memorandum in Support of an Order to Show Cause (DE 16), and is otherwise fully advised in the premises.

### I.    Procedural History

On March 10, 2006, Plaintiff initiated this action against Defendants alleging that Defendants violated sections 5(a) and 12 of the Federal Trade Commission Act by making unsubstantiated representations that their products could treat a range of serious diseases and by making false claims of clinical proof. (*See* DE 1). Shortly after Plaintiff filed its Complaint, the Parties entered into a Consent Decree, which this Court adopted in full in a Stipulated Final Order. (*See* DE 8).

1

The Stipulated Final Order enjoined Defendant Garden of Life ("GOL") and Defendant Jordan S. Rubin ("Rubin"), the founder of GOL, from making certain representations concerning covered products (*see* DE 8 ay 4-5) and from misrepresenting tests or studies (*see* DE 8 at 5).

## II. Order to Show Cause

On September 9, 2011, Plaintiff filed the instant Motion, in which it alleges Defendant Garden of Life ("GOL")[1] violated the permanent injunction in the following ways: (1) GOL falsely claimed that RAW Vitamin C, RAW Calcium, and the Grow Bone System contained "no soy allergens" (*see* DE 16 at 7); (2) GOL made baseless claims that Ocean Kids has "brain-boosting powers" and other benefits for children (*see* DE 16 at 9); and (3) GOL made unfounded claims that RAW Calcium and the Grow Bone System are superior to other calcium supplements and falsely represented that this claim was backed by human clinical studies *(see* DE 16 at 11).

## III.    Legal Discussion

In order to hold Defendants in civil contempt for violating the Stipulated Final Order, Plaintiff must demonstrate the following by clear and convincing evidence: "(1) the allegedly violated order was valid and lawful; (2) the order was clear, definite and unambiguous; . . . (3) the alleged violator had the ability to comply with the order"; and (4) the defendant violated the order. *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000) (quoting *Jordan v. Wilson*, 851 F.2d 1290, 1292 n. 2 (11th Cir. 1988) (per curiam)).

---

[1] Since Rubin is an executive of GOL, GOL's actions are imputed to Rubin.

"The determination of whether a defendant violated a permanent injunction begins with a close examination of the judgment." *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1240 (11th Cir. 2000) (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2nd Cir. 1995)). Particularly concerned with the repercussions that may result from an unclear, indefinite, and ambiguous order, the Eleventh Circuit ruled that

> [A] court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid . . . . Thus, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed. R. Civ. P. 65(d). Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."

*American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996)). With this framework in mind, I move to the allegations set forth in Plaintiff's Motion.

### IV. Application

I will first consider whether Plaintiff demonstrated by clear and convincing evidence that Defendants violated the Order. By entering into the Consent Decree, Defendants were enjoined from making (1) unsubstantiated representations ("Section One") and (2) misrepresentations about any test or study ("Section Two").

#### A. Unsubstantiated Representations

Specifically, the applicable provisions of Section One enjoin Defendants from "making, or assisting others in making, directly or by implication, including through the use of any trade name or endorsement, any representation" (1) that a certain product "mitigates, treats, prevents, or cures any disease or illness" or (2) "[a]bout the absolute or

3

comparative health benefits, efficacy, performance, safety, or side effects of such product." (*See* DE 8 at 4-5). The Order provides that Defendants will not violate Section One if "at the time the representation [was] made," Defendants "possess[ed] and rel[ied] upon competent and reliable scientific evidence that substantiates the representation." (*See* DE 8 at 5). Competent and reliable scientific evidence is defined in the Order as "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results." (*See* DE 8 at 3).

B. Misrepresentations

With respect to misrepresentations, Defendants were permanently enjoined "from misrepresenting, in any manner, expressly or by implication, including through the use of any trade name or endorsement, the existence, contents, validity, results, conclusions, or interpretations of any test or study." (*See* DE 8 at 5).

C. Alleged Violations

### 1. "No Soy Allergens" Claim

First, Plaintiff asserts Defendants violated Section One by falsely claiming that RAW Vitamin C, RAW Calcium, and the Grow Bone System contained "no soy allergens." (*See* DE 16 at 16). Plaintiff claims GOL violated this section because (1) it never possessed competent and reliable scientific evidence that substantiated its claim that these products contained "no soy allergens" and (2) it had evidence that soy was present in these products. (*See* DE 16 at 16). In response, Defendants argue it "does not

manufacture the subject products" and based its "no soy allergens" claim "on allergen statements received from its many suppliers." (*See* DE 40 at 11).

Plaintiff fails to identify which provision of Section One GOL violated by making its claim that the products contained "no soy allergens"; however, after considering Section One, it appears the only section that could encompass this allegation is subsection J, which prohibits GOL from making unsubstantiated representations about the safety of its products. (*See* DE 8 at 5). Without offering any evidence or argument in support of its claim that allergen statements do not constitute competent and reliable scientific evidence, Plaintiff merely concludes that these records are insufficient. (*See* DE 16 at 16). I find allergen statements fall within the category of "other evidence" that qualifies as competent and reliable scientific evidence, which can substantiate GOL's claim that its products contained "no soy allergens." (*See* DE 8 at 3). Allergen statements are reports prepared by a manufacturer that detail the allergens contained in the manufacturer's products. These statements are reliable because a manufacturer could expose itself to significant liability if it failed to disclose allergens contained within its products. Also, the manufacturer is in a unique position to objectively evaluate and determine the allergens contained in its product.

Turning to Plaintiff's second allegation, I must consider whether Plaintiff demonstrated by clear and convincing evidence that GOL did not have competent and reliable scientific evidence substantiating its "no soy allergen claim" because one allergen statement supposedly established soy was present in GOL's products. Plaintiff's sole piece of evidence establishing that GOL should have known soy was present in its products is an allergen statement ("Statement") sent to GOL from the Grow Company

5

("Grow") on November 1, 2007. (*See* DE 43- Attachment 1 at 64-65). Before analyzing the Statement, it is necessary to briefly describe the three products. The products contain the following amount of raw materials: (1) RAW Vitamin C contains 7; (2) RAW Calcium contains 12; and (3) the Grow Bone System contains 23. (*See* DE 40 at 11; *see also* Ray Decl. at ¶ 7). Grow only supplies "two unique raw materials", Vitamins C and D, which are used in these products. (*See* DE 40 at 11; *see also* Ray Decl. at ¶ 14).

Plaintiff argues the Statement "confirmed the presence of soy in ingredients of Defendants' vitamin C and calcium products. Specifically, Grow states in the Allergen Questionnaire for 'All' 'Grow-Nutrients' 'soy or its derivatives' . . . are 'Present in the Product,' as well as 'Present in Other Products Manufactured on the Same Line' and 'Present in the Same Facility.'" (*See* DE 16 at 17). Notably, only two ingredients from the Grow Company are utilized in the three products, and, Plaintiff did not provide any evidence establishing that the ingredients containing soy came from Grow.

In response, GOL raises the following arguments: (1) Grow represented in the Statement that soy or its derivatives could only be found in the Vitamin E and Niacinamide ingredients; (2) Grow's Vice President of Operations confirmed that Grow did not use allergenic ingredients in its products; and (3) Grow represented that its proprietary fermentation process used to produce the ingredients would consume and destroy any residual soy. The statements and written representations made by Grow also qualify as "other evidence" under the Consent Decree because this evidence is based on statements made by the manufacturer who is qualified to evaluate the ingredients. Again, as previously stated, the manufacturer will objectively evaluate the presence of allergens

in its products because the failure to do so could expose the manufacturer to significant liability.

First, GOL argues Grow represented it "did not use allergenic ingredients in its production protocols" and that soy or its derivatives could only "be found in [the] Grow Company's Vitamin E and Niacinamide ingredients", which are not present in the aforementioned products. (*See* DE 40 at 11). The following comment was included in the Statement: "Few Vitamins including; Vitamins E and Niacinamide do use corn meal and/or soy meal concentrate." (*See* DE 43-Attachment 1 at 65).

On the same day GOL received the Statement, GOL's executives contacted Dr. Massoud Arvanaghi ("Arvanaghi"), Grow's Vice President of Operations, about the presence of allergens in Grow's products, and, Dr. Arvanaghi confirmed that Grow "do[es] not utilize any allergenic ingredients in their production protocols." (*See* DE 43-Attachment 1 at 67). Additionally, even if soy was initially present in Grow's products, GOL relied on Grow's representation "that the proprietary fermentation process the Grow Company uses to produce these vitamins would consume and destroy any residual soy." (*See* DE 40 at 10; *see also* Ray Decl. at ¶ 14). Plaintiff argues that GOL's evidence is insufficient because the Statement "directly contradicts" the letter, which demonstrates that this evidence "falls well short of competent and reliable scientific" evidence. (*See* DE 16 at 17 n. 7).

All GOL was required to possess when making the "no soy allergen" claim was competent and reliable scientific evidence as defined in the Consent Decree. Plaintiff failed to establish by clear and convincing evidence that GOL did not possess competent and reliable scientific evidence. GOL received a Statement from Grow, and, in order to

7

clarify whether allergens were present in the products, GOL contacted a high-level Grow executive, who reported that Grow does not use allergenic ingredients. Moreover, Plaintiff did not establish that the two ingredients provided by Grow, Vitamins C and D, contained the traces of soy found in the three products. (*See* DE 40 at 11). Even if these two ingredients were the source of the soy contained in the products, GOL relied on Grow's representation "that the proprietary fermentation process the Grow Company uses to produce these vitamins would consume and destroy any residual soy." (*See* DE 40 at 10; *see also* Ray Decl. at ¶ 14). This belief is substantiated by Dr. Arvanaghi's representation to GOL that Grow does not utilize allergenic ingredients. Accordingly, Plaintiff failed to demonstrate by clear and convincing evidence that Defendants did not possess competent and reliable evidence substantiating GOL's claim.

While it does not affect the analysis under Section One, it is worth noting that "there have been no reported clinical incidents of any adverse health effects connected with the 'no soy allergen' claim" (*see* DE 40 at 10) and this "claim was one of dozens of ancillary attributes GOL listed for these products" (*see* DE 40 at 11). Furthermore, after receiving and reviewing the test results, "GOL voluntarily (1) recalled all of its RAW Vitamin C products, (2) changed the labels and packaging of the entire Vitamin Code product line to eliminate the 'No Soy Allergens' claim, and (3) destroyed the existing inventory of old Vitamin Code labels and packaging, all at a cost of several hundred thousand dollars." (*See* DE 40 at 12).

### 2. Oceans Kids

Second, Plaintiff asserts Defendants made unsubstantiated representations about the Oceans Kids DHA Chewable Softgels ("Oceans Kids") (*see* DE 16 at 19), a

children's omega-3 dietary supplement for children two years and older (*see* Bellinger Expert Report at 1). "Oceans Kids . . . contains EPA, DHA, ALA, and Omega 9, as well as Vitamin E and naturally occurring Vitamins A and D." (*See* DE 40 at 5). GOL made the following representations about Oceans Kids: it (1) "boosts brain development"; (2) "boosts cognitive function"; (3) "supports or boosts mental focus"; (4) "is important for eye development" and (5) "supports positive mood and behavior" (*see* DE 16 at 19). GOL made these representations from March 2009 until June 2010. (*See* DE 40 at 6; *see also* DE 16 at 21).

Dr. David C. Bellinger ("Bellinger"), the expert Plaintiff retained to opine "whether competent and reliable scientific evidence substantiates" the claims made by GOL "regarding the effects of Oceans Kids" (*see* Bellinger Expert Report at 1), believes the claims made by GOL were not substantiated by competent and reliable scientific evidence (*see* Bellinger Expert Report at 1). Defendants' expert, Dr. Steven M. Weisman, disagrees with Bellinger and believes "that the Oceans Kids dietary supplement offers well documented benefits that are based upon competent and reliable evidence." (Weisman Decl. at ¶ 13). Weisman wrote a memorandum to GOL on January 12, 2009, in which he "evaulat[ed] the efficacy of" the aforementioned claims for GOL's "proposed children's DHA product." (Weisman Decl. at ¶ 15). In the memorandum, which GOL relied upon when it began making the representations about Oceans Kids, Wesiman wrote that "studies provide reasonable scientific support for" GOL's claims. (*See* DE 46-Exhibit 1 at 2-3).

After considering both reports, I find Plaintiff failed to establish by clear and convincing evidence that Defendants violated Section One of the injunction by making

9

the aforementioned representations with respect to Oceans Kids. Indeed, the evidence establishes that GOL hired an outside expert to evaluate whether the aforementioned representations were supported by competent and reliable scientific evidence. To find that GOL violated the terms of the Order solely because another well-respected expert defines "brain development" differently or disagrees with certain aspects of a study's "trial design" would require this Court to read additional requirements into the Consent Decree. (*See* Bellinger Expert Report at 7, 9).

### 3. RAW Calcium and Grow Bone System

Finally, Plaintiff asserts Defendants "[v]iolate[d] Section I of the Stipulated Final Order by [m]aking [g]roundless [c]laims that RAW Calcium and the Grow Bone System [o]ffer [s]uperior [h]ealth [b]enefits to [o]ther [c]alcium [s]upplements." (*See* DE 16 at 21). "The Grow Bone System consists of two dietary supplements": (1) RAW Calcium and (2) "Growth Factor S". (*See* DE 40 at 8). "RAW Calcium, includes AlgaeCal, calcium sourced from marine algae, with added magnesium, boron, Vitamin $D_3$, Vitamin $K_2$, and Vitamin C" (*see* DE 40 at 8), while "'Growth Factor S' provides strontium citrate" (*see* DE 40 at 8).

Specifically, Plaintiff argues GOL violated Section One for the following reasons: (1) not a single study exists that compares the effects of the Grow Bone System with any other calcium supplement (*see* DE 16 at 21); (2) GOL's claim that its marine algae-based calcium is superior to other calcium supplements is empirically false *(see* DE 16 at 21); and (3) GOL's claim that the Grow Bone System is superior to other calcium supplements due to the presence of "Growth Factor S" is unsubstantiated *(see* DE 16 at 23). Additionally, Plaintiff claims Defendants violated Section Two "by misrepresenting

the results and validity of clinical studies of AlgeaCal when marketing RAW Calcium and the Grow Bone System." (*See* DE 16 at 23).

I will first consider GOL's alleged violations of Section One. First, Plaintiff fails to allege which portion of Section One GOL allegedly violated when it made the aforementioned representations. After carefully considering Section One, I find that this section does not prohibit GOL from claiming its products are superior to competitor's products. The only provision that Plaintiff could argue applies is subsection J, which prohibits GOL from making unsubstantiated representations "[a]bout the absolute or comparative health benefits . . . of such product. . . ." (*See* DE 8 at 5). First, I interpret this provision to prohibit GOL from making either an absolute claim that its product treats certain health benefits or a claim that individuals who take a product will notice an improvement in their health compared to those who do not.

Interpreting this provision to prohibit GOL from making comparisons between its products and a competitor's products would be an unenforceable provision. A court cannot enforce an injunction "that merely require[s] someone to 'obey the law.'" *Hughey v. JMS Developmental Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (quoting *Payne b. Tavenol Labs., Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978), *cert. denied*, 439 U.S. 835, 99 S. Ct. 118, 58 L. Ed. 2d 131 (1974). Thus, "[b]road, non-specific language that merely enjoins a party to obey the law or comply with an agreement . . . does not give the restrained party fair notice of what conduct will risk contempt." *Hughey*, 78 F.3d at 1531 (internal citations omitted). Due to the possibility that a party may be held in contempt for violating its terms, an injunction "must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law." *Id.* (internal citations

11

omitted). Interpreting subsection J to prohibit GOL from making representations that its products treat certain illnesses or diseases better than other products would transform subsection J into an "obey the law" provision, which is unenforceable under Eleventh Circuit law. The other subsections of Section One clearly articulate the representations that GOL is prohibited from making, for example, subsection G enjoins GOL from making representations "[t]hat such product reduces the risk of obesity." (*See* DE 8 at 5). Subsection J does not even refer to competitor's products, let alone specifically enjoin GOL from making comparisons between its product and other products.

However, even if I interpreted subsection J to enjoin GOL from making claims that its products are superior to the products of its competitors, GOL still did not violate Section One. Each allegation hinges on GOL's representations that purportedly compare its Grow Bone System to other calcium supplements. Plaintiff alleges GOL

> [A]ggressively market[s] RAW Calcium and the Grow-Bone System as algae-derived calcium products that offer superior health benefits to other widely available calcium supplements, promising consumers that their supplements, and no others, reverse the normal bone mineral density loss that plagues adults from the age of 30 on. According to [GOL's] marketing, RAW Calcium offers "huge advantages" over other sources of calcium and the Grow Bone System is "[f]ar from 'just another calcium supplement'" like those that "at best, help slow down the rate of bone loss." Indeed, [GOL] claim[s] that only their supplements "stimulate[] bone growth," "increase[] bone strength," and "increase[] bone density."

(*See* DE 16 at 21). Plaintiff derived these allegations from the following portions of an article published by GOL:

> Here is the truth. No calcium supplement, taken in the absence of other vitamins and minerals and without proper diet and exercise, has ever been proven in clinical studies to help you strengthen bones. The <u>best that can be said is that calcium supplementation helps slow down or stop bone loss.</u>
> ...

> <u>Far from "just another calcium supplement"</u> intended to reduce the risk of osteoporosis, the Grow Bone System is intended to <u>stimulate bone growth, increase bone strength and bone mineral density</u>...
>
> Using plant-form calcium has <u>huge advantages</u> over rocksource [sic] calcium. For starters, while rock is technically a natural substance, it's not in human nature to eat rocks. Plants are, of course, a different subject. Sundrenched and teeming with life, our bodies thrive on the nutrition that plants provide. The same will never be said of rocks. Second, and of particular importance for bone health, when you take a whole food plant-form calcium supplement, you're getting far more than just calcium. While calcium is an important bone-building mineral, there are other nutrients vitally important to bone health. The consumption of minerals such as magnesium, silica, boron, vanadium and strontium have [sic] all been linked to healthy bones . . . .

(FTC Mem. Ex. 15 at 2) (emphasis added). Each of the underlined sections in the excerpt represents the statements Plaintiff alleges were unsubstantiated. After considering these statements in context, I find that even if subsection J enjoins GOL from making unsubstantiated representations about its products superiority to other products, GOL did not violate subsection J. Plaintiff took several statements completely out of context and manipulated them in an attempt to substantiate its allegation that GOL made unsubstantiated comparisons of the Grow Bone System to other products.

First, GOL only discussed the benefits of Grow Bone System in generic terms and did not compare its product to any other specific product. In the article, GOL merely stated the intended results of the Grown Bone System and compared plant-form calcium to rock-source calcium. GOL possessed reliable and competent evidence when it made these general statements. GOL relied on Dr. Weisman's "Calcium for Bone Health" report which he issued to GOL on March 10, 2009. (Weisman Decl. at ¶ 20). In his report, Dr. Weisman "reviewed ten human studies which demonstrated the utility of calcium, particularly calcium carbonate, in supporting bone health. These studies

13

substantiated the use of calcium and calcium in combination with vitamin D and other nutrients and minerals (as found in RAW Calcium and the Grow Bone System) in supporting bone density and overall health)." (Weisman Decl. at ¶ 20). Dr. Weisman points to several studies in his declaration that support the general statements made by GOL. (Weisman Decl. at ¶ 21-27). Again, the Consent Decree does not require GOL to only make representations that are supported by uncontroverted evidence; rather, the Consent Decree merely requires GOL to possess competent and reliable evidence that substantiates its claims.

Plaintiff claims GOL also violated Section Two "by misrepresenting the results and validity of clinical studies of AlgeaCal when marketing RAW Calcium and the Grow Bone System." (*See* DE 16 at 23). Plaintiff asserts GOL

> [P]romote[s] [its] purported clinical proof on [its] product packaging, in [its] print, radio, and television advertisements, and on their web site. Defendants boast to consumers that, for example, their products are "backed by clinical studies," "clinically demonstrated," and "clinically studied" to produce the advertised effects. [GOL] also offer[s] up a specific study and its results as proof of [its] claims, repeatedly misrepresenting, in virtually all advertisements for the Grow Bone System and in advertisements for RAW Calcium as well, that participants in a clinical trial "consumed the ingredients in the Grow Bone System" and "[i]n just six months" experienced average increases in bone mineral density from a "significant" 2.8% increase to an "amazing" 3.7% increase.

(*See* DE 16 at 23). In response, GOL argues that (1) the clinical trials were performed using "a formulation substantively identical to the final formulation of the Grow Bone System, as well as multiple studies from scientific literature that substantiate widely-accepted bone health claims (including claims about bone mineral density) for calcium, strontium, magnesium, and Vitamin D" (*see* DE 40 at 9) and (2) GOL relied on Dr. Weisman's report which substantiated the aforementioned representations.

14

As previously stated, Section Two only enjoins GOL from "misrepresenting, in any manner, expressly or by implication, including through the use of any trade name or endorsement, the existence, contents, validity, results, conclusions, or interpretations of any test or study." (*See* DE 8 at 5). Despite Plaintiff's allegations otherwise, the fact GOL never conducted "clinical studies of RAW Calcium" and "the Grow Bone System" is not a violation of Section Two (*see* DE 16 at 24) because Section Two does not require GOL to conduct its own studies to authenticate its claims. According to Plaintiff, GOL stated the participants in the trial "consumed the ingredients in the Grow Bone System." (*See* DE 16 at 23). This statement is literally true (Weisman Decl. at ¶ 32); therefore, it is not a violation of the Consent Decree.

It appears Plaintiff's real qualm with GOL's statements appears to rest on GOL's reliance on an allegedly "fatally flawed . . . . study." (*See* DE 16 at 24). Section Two does not require the "test or study" GOL uses to be reliable or performed in a certain manner. (*See* DE 8 at 5). Nevertheless, GOL hired Dr. Weisman to write an expert report, which he produced on June 2, 2010, in which he "reviewed the scientific literature and determined that GOL had substantiation for its claims that (1) the Grow Bone System product is clinically demonstrated to stimulate bone growth, increase bone strength, and increase bone mineral density; (2) the Grow Bone System product can increase bone mineral density by between 2.8 to 3.7 percent in six months; and (3) the Grow Bone System product contains plant-form calcium, which has huge advantages over rock-source calcium." (Weisman Decl. at ¶ 32). Essentially, on its own initiative, GOL obtained competent and reliable evidence supporting its representations concerning the results and validity of the AlgeaCal clinical studies. After considering the record, I find

Plaintiff failed to establish by clear and convincing evidence that GOL violated Section Two of the Order.

### V. Conclusion

After considering the record, I find Plaintiff failed to establish by clear and convincing evidence that Defendants violated the Final Stipulated Order. Therefore, it is unnecessary to consider whether the Consent Decree was (1) valid and lawful; (2) clear, definite and unambiguous; or (3) whether Defendants had the ability to comply with the order.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. Defendants are not in contempt of the Stipulated Final Order; and
2. Defendants' Motion for Hearing (DE 41) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 27 day of February, 2012.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record